COOKS, Judge.
This case involves enforcement of a judgment against a sheriffs department for tor-tious acts occurring during a former sheriffs administration. Evangeline Parish Sheriffs Deputy, Kathy Riley, was injured when she tripped and fell on a water hose extended across the sidewalk by a trustee assigned to wash cars. Routinely, Evangeline Parish Sheriffs permitted prisoners to wash cars on the courthouse parking lot. Kathy Riley was familiar with this practice. Earlier on the date of the accident, her vehicle was washed by a trustee.
Kathy Riley filed a personal injury action against the Evangeline Parish Police Jury, the Evangeline Parish Sheriffs Department, and their respective insurers, if existent, and named as “ABC and DEF” Insurance Companies. At the time of the alleged accident and filing of suit, Floyd Soileau was the Sheriff of the Parish of Evangeline.
Although Mrs. Riley’s accident would fall ordinarily within the purview of the Worker’s Compensation Act, injuries sustained by sheriffs deputies during the course and scope of their employment are statutorily exempted from coverage under the Act. A sheriffs officer who sustains work related *1315 injuries must seek relief under general tort law. The trial judge found former Sheriff, Floyd Soileau, vicariously hable in- tort for the trustee’s negligence. However, he held the judgment was not enforceable against the former sheriff, personally, or against the funds under the direction and control of the successor Sheriff, Wayne Morein.
EXCEPTION OF NO CAUSE OF ACTION
Preliminarily, we turn to address appel-lee’s exception of no cause of action originally filed at the trial level. The trial court neither heard nor ruled on the exception. Ap-pellee refiled and now seeks to reurge the exception before this court in accordance with Louisiana Code of Civil Procedure article 927 which permits filing of a no cause exception at any time prior to the judgment’s finality. Essentially, the exception as lodged attacks Mrs. Riley’s right to proceed against the Evangeline Parish Sheriff Department as a legal entity. The main thrust of the exception focuses on the status of Sheriffs Departments generally and their juridical existence. We will discuss the underlying question raised by the exception in due course.
However, an exception of no cause of action tests the sufficiency in law of the petition. Darville v. Texaco, Inc., 447 So.2d 473 (La.1984). The exception aims at forcing early dismissal of an action where the law affords “no remedy to anyone for the particular grievance alleged.” Meche v. Arceneaux, 460 So.2d 89 (La.App. 3rd Cir.1984). The exception must be decided by considering the facts alleged in the petition only. Procedurally, the mover is barred from contesting the truthfulness or correctness of the facts pled in the petition which must be conceded. Smith v. Cole, 541 So.2d 307 (La.App. 5th Cir.1989). No evidence is admissible to support or defeat the exception. In deciding the merits of the exception on appeal, we are restrained from considering any defenses alleged at trial or pleadings filed by appellee below. LSA-C.C.P. 931: Bielkiewicz v. Rudisill, 201 So.2d 136 (La.App. 3rd Cir.1967). Strictly viewed, the four corners of the petition are the limited boundary of our factual inquiry. A mover may not use the exception on appeal to abort full appellate review of the case simply because the record contains valid defenses to the claims. Gustin v. Shows, 377 So.2d 1325 (La.App. 1st Cir.1979). Furthermore, the exception may not be invoked to determine whether a particular defendant can stand ultimately in judgment in a case. Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972). Any such defenses must go to the merits only following examination of the full record on appeal. Gustin v. Shows, supra.
We note Riley’s petition alleged the Evangeline Parish Sheriffs Department is a political subdivision of the State of Louisiana capable of suing and being sued. It further alleged the existence of an employer-employee relationship between the Sheriffs Department and the Trustee; that the Trustee was negligent; and that the Trustee’s tortious acts were committed during the course of his relationship with the Sheriffs Department. Accepting these pled facts as true, Riley stated a recognized cause of action in Louisiana tort law. Appellee’s exception of no cause of action must fail. Accordingly, we are required to complete our review of the ease.
ISSUE
As noted, the primary issue is whether tort liability occurring during a former sheriffs term is recoverable against the sheriffs department, as a legal entity; and thereby enforceable against existing funds under the control of a successor sheriff. The parties also assign as error the trial court’s apportionment of fault and damages. For the following reasons, we reverse in part and affirm in part.
LAW AND ANALYSIS
Appellee insists the law and jurisprudence do not mandate enforcement of a former administration’s vicarious obligations against a successor sheriff or his department. We disagree.
BACKGROUND — JURISPRUDENCE AND LEGISLATION
The federal court, interpreting Louisiana’s jurisprudence, in Slack v. Bishop, 444 *1316 F.Supp. 1161 (W.D.La.1978), ruled trustees were quasi-deputies; and thus sheriffs were responsible for their negligence only in the performance of official duties. Analogous reference to the jurisprudence, relating to a sheriffs legal responsibility for the delictual acts of his deputies, initially proved troublesome to courts in defining a sheriffs liability for the negligence of others who worked under his supervision and control. This cloud in the jurisprudence often resulted in problems relating to the enforcement of judgments for negligent injuries resulting from the sheriffs operations which were not assignable to the sheriff, individually or officially. Louisiana Courts wrestled for years with different theories in attempting to determine the scope of a sheriffs liability for his deputies’ torts. Early statutory law offered little aid to courts in resolving this judicial dilemma. The Louisiana Supreme Court in Gray v. DeBretton, 192 La. 628, 188 So. 722 (1939), held vicarious liability did not attach to sheriffs under the doctrine of re-spondeat superior or master and servant for the wrongful acts of deputies which were not committed in the discharge of “official duties or as a result of the performance of official acts.” Exactly what acts constituted breach of a deputy’s official duty, as opposed to his private duty, were not easily discernable. For example, in Gray suit was filed against the sheriff arising from the negligence of a deputy in driving a sheriffs unit off the road while transporting a prisoner to the parish jail, striking plaintiff and his two sons. The Court found the sheriff was not liable because the duty violated by the deputy was not an official duty, but an individual or private duty owed to all pedestrians on the highway. Gray and its progeny reflect a period in our jurisprudence of ambivalence and uncertainty regarding enforcement of judgments against sheriffs for the negligence of deputies or others working for the sheriffs department. Nielson v. Jefferson Parish Sheriff’s Office, 242 So.2d 91 (La.App. 4th Cir.1970); Frank v. Pitre, 341 So.2d 1376 (La.App. 3rd Cir.1977), reversed, 353 So.2d 1293 (La.1977). The “official act standard of liability,” though confusing in practice, was applied by Louisiana and federal courts prior to the Supreme Court decision in Jenkins v. Jefferson Parish Sheriff’s Office, 402 So.2d 669 (La.1981). Sheriffs generally were not responsible vicariously for the acts of their deputies or trustees. In stark contrast, city policemen were recognized as “officers and employees,” permitting the imposition of vicarious liability against the city for wrongful injuries inflicted by officers and other employees while performing their duties. Application of pre-Jenkins jurisprudence to the facts of this case would render plaintiffs judgment unenforceable because the negligent conduct of the trustee could not be imputed vicariously to the former sheriff.
The 1974 Louisiana Constitution in Article XII, Section 10(A) abolished governmental immunity forcing courts to revisit the issue of a sheriffs vicarious responsibility for the acts of deputies and trustees. In Liberty Mutual Insurance Company v. Grant Parish Sheriff’s Dept. 350 So.2d 236 (La.App. 3rd Cir.1977), writ denied, 352 So.2d 235 (La.1977), we held sheriff departments were not legal entities “capable of suing and being sued.” Only the sheriff, individually, was liable for the negligence of his deputies committed under his direct orders or in the performance of their official duties. We concluded a successor sheriff was not liable for the delictual acts of his predecessor. Interestingly, however, we noted in passing that LSA-R.S. 33:1450.1 allows sheriffs to contract for insurance to cover losses or damages occasioned from negligent acts committed by them or their deputies. This undoubtedly was an attempt by us to ultimately find a legal entity to assign responsibility for the sheriffs vicarious liability, i.e. an insurance company, thus avoiding obvious conflict with the Constitution’s immunity prohibition.
Next, the Louisiana Supreme Court in Foster v. Hampton, 381 So.2d 789 (La.1980), applied the “official duty standard;” but held the State vicariously liable for the deputy’s tort. See also Foster v. Hampton, 352 So.2d 197 (La.1977). The legislature quickly responded by amending LSA-R.S. 33:1433 deleting the language relied upon by the Foster Court regarding the sheriffs general immunity from liability for vicarious acts. Further, the legislature enacted LSA-R.S. 42:1441 specifically prohibiting suits against *1317 the State for the sheriff and his deputies’ liability.
Nonetheless, several appellate courts joined by the Supreme Court continued to apply the Foster decision recognizing the State as a deputy’s employer. See Foster v. Hampton, 381 So.2d 789 (1980), on review before the Supreme Court after enactment of LSA-R.S. 42:1441, followed by Michaelman v. Amiss, 385 So.2d 404 (La.App. 4th Cir. 1980) and Carmouche v. Oubre, 394 So.2d 805 (La.App. 4th Cir.1981). However, in Martinez v. Reynolds, 398 So.2d 156 (La.App. 3rd Cir.1981), we interpreted the enactment of LSA-R.S. 42:1441 as legislatively overruling Foster. Accordingly, we found Section 1441 destroyed any cause of action against the State. Furthermore, upholding Section 1441, as not violating Article XII, Section 10(A) of the 1974 Louisiana Constitution, we reasoned the legislature provided plaintiffs with an adequate remedy by removing any limitation on the liability of sheriffs and thereby inferentially expressing an intent to treat sheriffs’ departments as legal entities responsible for vicarious fault.
Promptly reconsidering this issue, the Supreme Court adopted the more functional approach, first employed by us in Martinez, in assigning vicarious tort liability to sheriffs in Jenkins v. Jefferson Parish Sheriff’s Office, 402 So.2d 669 (La.1981). Jenkins effectively overruled a long line of cases holding that sheriffs departments were not juridical entities capable of being sued. The Court reasoned:
The reality of the situation is that there does exist an employment relationship between a sheriff and his deputies. The sheriff, and not the state, hires and fires deputies, exercises direct and indirect supervision and control over them, fixes their time and place of work, and generally allocates their responsibility and assigns their duties. Although the money for the operation of the various sheriffs’ departments may come from various sources of public funds (primarily fees as tax collector and in civil and criminal matters), the sheriffs disburse the allocated funds and actually pay most of the salaries of the deputies with these funds. No one but the sheriff can realistically be viewed as the employer of the deputies. Whether the sheriff is the appropriate governmental entity on which to impose liability for the employment-related torts of the deputy sheriff is a more difficult question.
The doctrine of respondeat superior is based on the rationale that the enterprise should pay for damages caused by one who is acting in furtherance of the enterprise. Here, there is no enterprise. The deputy on duty is acting in furtherance of the public good, and the damages caused by those actions of the deputy should be paid by public funds.
The Legislature, in enacting Act 318 of 1978, has clearly indicated its intention that governmental responsibility for torts committed by a public employee should be placed on the public officer most closely related to the tortfeasor. The Legislature also removed the previous statutory immunity enjoyed by the sheriff. Moreover, as noted in the discussion of the employment relationship, neither the state nor the parish (the other logical entities on which liability might be imposed) exercises any significant control over sheriffs deputies. We conclude that the sheriff is the appropriate governmental entity on which to place responsibility for the torts of a deputy sheriff
* * * * * ⅜
How the obligation may be enforced is one of the practical problems not solved by this decision. In this case, for example, any judgment against this sheriff in his official capacity will have to be recovered (disregarding the probability of liability insurance) from the official funds of his successor sheriff, since Cronvieh is no longer in office. Future incidents can be provided for by liability insurance. [Emphasis added]
By identifying the sheriff as the “appropriate governmental entity on which to place liability,” the Supreme Court has resolved the issue now before us.
*1318 POST-JENKINS JURISPRUDENCE
The jurisprudence has consistently followed Jenkins in assigning a sheriff with vicarious liability for the negligence of their deputies. Cooley v. State, 533 So.2d 124 (La.App. 4th Cir.1988); Nall v. Parish of Iberville, 542 So.2d 145 (La.App. 1st Cir.1989). We adopted the Jenkins holding in Sullivan v. Quick, 406 So.2d 284 (La.App. 3rd Cir.1981). The legislature also responded by enacting a comprehensive plan allowing sheriffs to pool their funds to provide “Group Self-Insurance,” presumably at lower cost, to cover their expanded “liability” as recognized in Jenkins in an obvious attempt to reduce the financial impact on the sheriffs funds. See also, LSA-R.S. 33:1450.1.
We are not persuaded in this case to reach a different result by ignoring the sensible approach employed in Jenkins, followed by us in Martinez and Sullivan, as suggested by appellee. Such divergence would reintroduce confusion and inconsistency in our case law. The 1974 Constitution and subsequent legislation prevents us from jurisprudentially immunizing sheriffs and the public funds under their control from liability for the wrongful acts occasioned by their operations.
Therefore, we find the trial judge acted without legislative or jurisprudential authority in barring enforcement of the judgment against the Evangeline Parish Sheriffs Department and the funds under the direct control of Sheriff Morein. We amend the judgment to permit its enforcement against the Evangeline Parish Sheriffs Department, as a legal entity, and against the funds under the control of the present sheriff.
APPORTIONMENT OF FAULT
Both parties assert the trial court erred in assigning their respective comparative faults. Mrs. Riley contends her percentage of fault should be reduced; while defendant urges it should be increased. When damages are insusceptible of precise measurement, much discretion is left to the trial court to make reasonable awards. LSA-C.C. art. 1999. Absent an initial determination that the trial court’s great discretion has been abused under the facts of this case, we cannot disturb the trier’s award. Boswell v. Roy O. Martin Lumber Co., Inc., 363 So.2d 506 (La.1978); Mitchell v. State, through DOTD, 596 So.2d 353 (La.App. 3rd Cir.1992), writ denied, 600 So.2d 680 (La.1992). We find the trial court did not manifestly err in apportioning fifty percent (50%) of the fault to each party. Plaintiff was an employee of the Sheriffs Department. As noted by the trial judge, she knew or should have known that hoses were often stretched across the sidewalk. Her. ear was washed on the day of the accident. The trial judge did not manifestly err in concluding Mrs. Riley could have exercised greater care in guarding against an obvious and known danger.
The defendant’s practice of allowing trustees to wash cars on the courthouse parking lot by extending water hoses across the sidewalk created an unreasonable risk of injury. It was certainly foreseeable that a person using the sidewalk might slip and fall on the water hose. Defendant could have easily avoided the harm posed in this case by posting signs, roping the area, or moving the car washing activities to another area.
DAMAGES
Plaintiff complains the trial court’s award of damages is inadequate under the circumstances. The judge awarded plaintiff $10,-000.00 for physical and mental pain and suffering, $5,000.00 for lost wages, and $2,052.33 for medical expenses. Plaintiff cites a number of cases in which greater damages were awarded.
It is well settled that the factors which should be considered in assessing damages include the severity of pain and suffering and permanency of the disability resulting from the accident. General damages must be based upon competent medical evidence. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The trial court noted plaintiff suffered from two (2) pre-existing back conditions, as well as a pre-existing mental condition. Also, the trial court relied heavily on the testimony of Dr. Douglas McKay, an ortho *1319 pedist, rather than the testimony of Dr. Charles Fontenot, a general practitioner. It is well settled that reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. Rosell v. Esco, 549 So.2d 840 (La.1989).
Dr. McKay testified the back pain suffered by plaintiff was “mechanical in origin” and plaintiff had a normal neurological examination with no disc or sciatica problems or muscle spasms in the back. From his examination of plaintiff and evaluation of diagnostic testing (including x-rays, MRI and C-Scan results), Dr. McKay concluded plaintiff did not sustain any residual disability or permanent aggravation of her pre-existing back condition. He testified that the pain and discomfort experienced by her, reasonably connected to the fall, should have subsided within one year. Based upon this testimony the trial court rendered its award for physical and mental pain and suffering. After reviewing the record, we find no clear error on the part of the trial court in quantifying the injuries. Also, the trial judge’s assessment of special damages for loss of wages was not clearly wrong or abusive in light of his conclusion that the medical facts did not support a finding of “permanent” impairment or the existence of prolonged aggravation of her pre-existing disabilities which would hinder or prevent her from performing work the same as or similar to her pre-injury job.
DECREE
For the foregoing reasons, we reverse that portion of the trial court’s judgment which barred plaintiff from executing her judgment against the Evangeline Parish Sheriffs Department and the funds under the direction and control of Wayne Morein. In all other respects, the judgment is affirmed. The costs of this appeal are assessed against defendant-appellee.
REVERSED IN PART, AFFIRMED IN PART.
STOKER, J., dissents and assigns reasons.
CULPEPPER, J. Pro Tem., dissents for the reasons assigned by STOKER, J.